# IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **BRITTANY BARNES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:09-cv-0764** |
| **v.** | ) | **Judge Nixon** |
| | ) | **Magistrate Judge Brown** |
| **CUS NASHVILLE, LLC,** | ) | |
| **d/b/a COYOTE UGLY SALOON,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Pending before the Court are Plaintiff Brittany Barnes' ("Plaintiff" or "Barnes") Motions in Limine (Doc. Nos. 88, 89, 90, 91, & 110) and Defendant CUS Nashville, LLC, d/b/a Coyote Ugly Saloon's ("Defendant" or "CUS Nashville") Motions in Limine (Doc. Nos. 98, 99, 101, 102, 104, 106, 107, & 108). Magistrate Judge Brown previously issued a Report and Recommendation ("Report"), regarding all of Plaintiff's Motions in Limine except for Plaintiff's General Motions in Limine (Doc. No. 88), which were resolved in part by an earlier Order of this Court (Doc. No. 147). Plaintiff and Defendant both filed Objections to the Report. (Doc. Nos. 156 & 157.) At a hearing before this Court on April 22, 2011, the Parties indicated that they had come to an agreement regarding Defendant's previously unresolved Motion in Limine No. 7 (Doc. No. 104), rendering it **MOOT**, and that agreement had also been reached as to all but the third and sixth paragraphs of Plaintiff's General Motions in Limine (Doc. No. 88), rendering the remaining general motions contained in that filing **MOOT** as well. The Parties indicated that they also intended to defer argument on Defendant's Motion in Limine No. 9 (Doc. No. 106) to a later time. As a result, the Court heard oral argument on Defendant's second, third, fourth, tenth,

1

and eleventh Motions in Limine as well as on the third and sixth paragraphs of Plaintiff's General Motions in Limine. The Parties did not present oral argument on Defendant's Motion in Limine No. 5.

The Court's rulings on these matters are outlined below.

## I. BACKGROUND[1]

The Court will summarize the facts and history of this case to date briefly for the purpose of providing context for the following rulings. Plaintiff, a resident of Kentucky, filed suit in this Court against CUS Nashville, a Tennessee limited liability company with its principal place of business in Cornwall, New York on August 20, 2009. (Doc. No. 1 at 1.) Plaintiff alleges that some time after 2:00 a.m. on September 19, 2008, she slipped and fell off of the bar at the Coyote Ugly Saloon in downtown Nashville, resulting in a head injury and complete and permanent loss of her sense of smell. She went to the hospital in Nashville after her fall, and then again when she returned home to Lexington. (Doc. No. 82 at 3.) She alleges that Defendant is liable for her injuries on the basis of negligence, because (1) CUS Nashville encouraged her to dance on a wet, slippery bar when it had knowledge that this could result in serious injury, and (2) CUS Nashville failed to remove or warn of the conditions prior to her fall. Defendant has denied that it was negligent and that the bar was wet and slippery at the time of the accident. Instead, Defendant asserts that Plaintiff herself was negligent in failing to exercise ordinary care while dancing on the bar after consuming alcohol. Further, Defendant challenges Plaintiff's claimed complete loss of her sense of smell, and argues that any dysfunction could have been caused by other factors such as a car accident two weeks after Barnes fell off the bar and her history of smoking.

---

[1] The following facts are drawn from the Parties' Joint Pre-Trial Order (Doc. No. 111) unless otherwise noted.

This case was previously scheduled for trial in August of 2010, and the Parties filed the motions that are presently under consideration on August 2, 2010. After a pretrial conference on August 12, however, the case was referred to Magistrate Judge Griffin for a settlement conference (Doc. No. 140), which ultimately proved unsuccessful (Doc. No. 143). Pretrial conference and jury trial were then rescheduled for April 22, 2011 and May 3, 2011, respectively (Doc. No. 144). Plaintiff's Motions in Limine were referred to Magistrate Judge Brown on March 1, 2011 (Doc. No. 153), and he subsequently issued his Report on March 23, 2011 (Doc. No. 155). Plaintiff filed objections on March 31, 2011 (Doc. No. 156), as did Defendant on April 1, 2011 (Doc. No. 157). As described above, this Court heard most of the remaining motions at the pretrial conference on April 22, 2011.

## II. DISCUSSION

### A. Plaintiff's Motions in Limine

#### i. *Plaintiff's General Motions in Limine*

As explained above, the parties have agreed to all matters contained in Plaintiffs General Motions in Limine (Doc. No. 88) save two, contained in paragraphs three and six of the Motion. Defendant filed a Response (Doc. No. 120).

Paragraph three argues that Defendant should be precluded from suggesting that "that Plaintiffs' counsel solicited the representation of Brittany Barnes or otherwise encouraged the Plaintiff to make a claim for damages against the Defendant" because such a suggestion would have no factual basis and would be unduly prejudicial under Federal Rules of Evidence 401 and 403. (Doc. No. 120 at 2.) As the undersigned stated at the April 22 hearing, this element of the Motion is **GRANTED** to the extent that Defendant is precluded from asking whether Plaintiff's counsel solicited representation of Barnes.

3

The sixth paragraph argues that the Defense "should be precluded from asking an expert to agree to facts not supported by the testimony in this case," specifically to improper hypothetical questions. As stated at the April 22 hearing, the Court **RESERVES** this issue for resolution during trial. Plaintiff may raise this objection in the context of the testimony presented.

> ii. *Plaintiff's Motion in Limine to Exclude Opinion Testimony of Defendant's Expert Witness, Charles M. Coones*

In this Motion, Plaintiff moves to exclude the testimony of Defendant's expert witness Charles M. Coones, a civil engineer and certified safety professional, on several matters, specifically: his reliance on Occupational Safety and Health Administration ("OSHA") standards in his expert report; his opinions and observations regarding the static coefficient of friction ("SCOF") on the bar surface; his testimony regarding grab rails to assist patrons atop the bar; his opinions regarding the adequacy of warning signs on Defendant's premises; and his conclusions regarding Plaintiff's knowledge of bar conditions (Doc. No. 89). Defendant filed a Response (Doc. No. 121). Magistrate Judge Brown recommended that this Motion should be granted in part and denied in part.

In his Report, Magistrate Judge Brown recommends that Coones should not be allowed to testify as to OSHA standards because they are offered so as to invade the province of the jury by asserting that the bar's conditions were or were not safe according to OSHA. (Doc. No. 155 at 2.) As to SCOF readings of the bar surface, the Report concluded that Coones should be allowed to testify about them, but not as to any industry or OSHA standard regarding SCOF on walking surfaces. *Id.* at 2-3. The Magistrate Judge took note of the fact that the OSHA standards Defendant cites are not intended to be binding, and that Coones could testify in other ways

4

regarding the SCOF reading and the conditions of the bar that would not invade the province of the jury (*i.e.*, by comparison to readings on other familiar surfaces). *Id.* at 3. Consistent with his recommendations described above, Magistrate Judge Brown also concluded that testimony as to the existence of grab bars would be permissible, but not as to OSHA standards on this point. *Id.* Finally, the Report recommends that while Coones' testimony regarding the existence and location of warning signs would be acceptable, any testimony as to the adequacy that these signs provided or Barnes' knowledge of the bar conditions and assumption of the risk would invade the province of the jury. *Id.*

Defendant objected to the Report on the basis that Coones should be allowed to testify as to the OSHA standard of .05 SCOF because it would assist the jury in understanding and assessing a fact at issue—whether CUS Nashville took adequate precautions to ensure that the bar surface was not slippery. (Doc. No. 157 at 1.) This standard is accepted in his field, and Plaintiff provides no expert testimony to challenge it. *Id.* at 2. Further, Defendant insists that the purpose of this testimony is not to establish a negligence per se standard (that Defendant's conduct did not meet, presumably), and instead rebuts Plaintiff's claim that adequate precautions were not taken regarding the bar surface. *Id.* Defendant requests that the Court find this evidence will not invade the province of the jury and admit it, or, alternatively, hold a hearing regarding the use of this standard. *Id.*

The Court finds the Magistrate Judge's Report to be well-founded and **ADOPTS** it in its entirety, thereby **GRANTING in part** and **DENYING in part** Plaintiff's Motion regarding Coones' testimony as described above. The Court disagrees with Defendant's argument that the OSHA standard is helpful to the jury. The Court has been provided no reason to believe that a non-mandatory standard for employee safety is one that creates a benchmark for *customer* safety,

and admission of the standard creates a danger of confusing the jury or leading them to believe that the OSHA standard takes the issue of the bar's safety OUT of their hands (despite Defendant's assurances that the standard is not intended to establish negligence per se). These concerns outweigh the limited probative value that the OSHA standard provides. Further, Coones may testify regarding the SCOF reading as Magistrate Judge Brown described in his Report to help the jury assess the nature of the bar's surface on the night in question. No hearing will be necessary on this matter.

      iii.    *Plaintiff's Motion in Limine to Exclude Any Testimony or Evidence of Plaintiff's October 2008 Motor Vehicle Accident and Arrest for Driving Under the Influence of Alcohol*

In this Motion, Plaintiff moves the Court to preclude Defendant's counsel or any witness from referencing Plaintiff's October 2008 motor vehicle accident and arrest (Doc. No. 90). In this same motion, Plaintiff also asserted that Dr. G. Lee Bryant should be prevented from testifying that Plaintiff potentially sustained olfactory nerve damage during the accident. *Id.* Defendant filed a Response (Doc. No. 124). Magistrate Judge Brown recommended that this Motion should be granted in part and denied in part. (Doc. No. 155 at 4.) Magistrate Judge Brown concluded that evidence of Plaintiff's accident has probative value and should be admitted because the airbag in her car deployed in the accident, and the jury might determine that this caused or exacerbated Plaintiff's injuries. *Id.* The Report finds that evidence of Plaintiff's arrest and conviction should not be admitted because of its highly prejudicial nature and its lack of probative value except as to Plaintiff's character. *Id.* The Report further stated that "Defendant may introduce evidence that Plaintiff consumed alcohol after her injury by other means." *Id.*

Plaintiff filed an objection to the report on the basis that "a jury should not be permitted to speculate as to (1) whether the airbag struck Plaintiff's head and/or (2) whether it exacerbated or caused any of her injuries," particularly in light of the fact that Plaintiff denies that the airbag hit her head. (Doc. No. 156 at 2.) She alleges that "Defendant seeks to bootstrap Plaintiff's failed field sobriety test into evidence by contending that her failure of the horizontal gaze nystagmus test is evidence of a traumatic head injury." *Id.* In her Motion, she also argued that Dr. Bryant's testimony regarding the possibility that Plaintiff sustained olfactory nerve damage should be excluded as unreliable under *Daubert v. Merrill Dow Pharm.*, 509 U.S. 579 (1993).

The Court is in agreement with the Magistrate Judge's Report and **ADOPTS** it to the extent that evidence of Plaintiff's arrest and conviction for driving under the influence must be excluded as unduly prejudicial, and that other evidence regarding the occurrence of the incident must be admitted as probative of the cause of Plaintiff's anosmia. The Court now clarifies whether other evidence that relates to Plaintiff's consumption of alcohol prior to the car accident may be admitted, and whether the testimony of Dr. Bryant will be allowed.

The Court finds that the results of field sobriety tests taken after the accident should be admitted because they appear to bear importantly on the issue of whether Plaintiff suffered trauma to her head in the accident. Plaintiff argues that her fall on Defendant's premises is the cause of her long-term olfactory dysfunction, but this front-end car crash is a plausible intervening cause or contributing factor to that condition. The testimony of Dr. Bryant will be that the results of the tests, particularly the nystagmus test, indicate the possibility of a head injury in the accident that could have caused or exacerbated the loss of smell about which Plaintiff complains. Whether the fall or some other factor caused the alleged anosmia is central to the issue of injury and damages in this case. The test results have significant probative value

7

as to an outcome-determinative fact in this case and should be admitted. Fed. R. Evid. 401, 402. Of course, Plaintiff will have an opportunity to attack Dr. Bryant's testimony as to his reasons for believing that Plaintiff sustained head trauma during the accident and to suggest that such testimony is too speculative. Plaintiff's attack on Dr. Bryant's status as an expert really goes to the weight of his testimony, not to its admissibility. The Court has been presented with no reason to doubt the reliability of the methods or analytical mode on which Dr. Bryant relied in coming to his conclusions. Plaintiff may elicit at trial reasons for the jury to find that his conclusions should be doubted.

There is indeed a risk of prejudice to Plaintiff that comes with the admission of such evidence. The Court finds, however, that the possibility of prejudice arising from the revelation that Plaintiff consumed alcohol before the car accident does not "substantially outweigh" the probative value of this evidence, which the court perceives as fairly high. Fed. R. Evid. 403. Further, the Court notes that it is no secret in this case that Plaintiff has consumed alcohol on occasion. Defendant is prohibited from referencing or eliciting testimony regarding Plaintiff's arrest and conviction, as well as her blood-alcohol level or conclusions by the police that she was in fact intoxicated at the time of the accident.

Plaintiff's Motion is **GRANTED in part** and **DENIED in part**.

    *iv.*    *Plaintiff's Motion in Limine to Exclude Any Photographs Taken of Plaintiff Other Than the Night of Plaintiff's Injury*

Plaintiff next seeks to exclude photographs taken of her other than on the night of her injury at CUS Nashville on the basis that such evidence should be excluded under Federal Rules of Evidence 402, 403, and 404(b). (Doc. No. 91.) Defendant filed a Response. (Doc. No. 122.) Magistrate Judge Brown recommended that all photographs of Plaintiff other than on the night of

her injury should be excluded because they are not relevant absent contrary testimony from Plaintiff for which the pictures from before or after her fall could serve as impeachment material. (Doc. No. 155 at 4.)  Plaintiff objects to the Report on the basis that there is no reason to believe that Plaintiff's drinking alcohol or partying before or after the night of the incident is relevant to any issue in dispute.  (Doc. No. 156 at 4.)  Defendant argues that some of the photographs demonstrate facts that will be relevant to Plaintiff's credibility and to her claim for damages, and asks the Court to consider the photographs in the context of trial.  (Doc. No. 157 at 3.)

The Court **ADOPTS in part** the Report's conclusion that photographs of Plaintiff other than the night of her injury may only be admitted for impeachment purposes regarding Plaintiff's conduct after the date of her injury.  For example, were Plaintiff to testify for the purpose of damages that the injury she sustained at Coyote Ugly has changed her lifestyle such that she can no longer enjoy or attend nights out with her friends, photographs of her post-injury conduct might be relevant.  The Court notes that it sees little independent probative value to images taken after the incident, as they simply depict Plaintiff on single instances in which she was posing for or was otherwise captured in photographs.  They may, however, create unfair prejudice and mislead the jury regarding Plaintiff's post-injury experience (unless being offered to contradict testimony as to Plaintiff's post-injury conduct), and constitute improper character evidence, creating an impression for the jury that Plaintiff is a "party girl."  For these reasons, they may only have a limited purpose.  The Court will **RESERVE** judgment on any specific photographs offered for impeachment purposes to the context of trial.

Plaintiff's conduct prior to the night in question is not probative of any issue in this case other than her character.  The Court **DECLINES to adopt** the Magistrate Judge's recommendation that photographs taken prior to the night of Plaintiff's injury might be

admissible for impeachment purposes.  As such, this Motion is **GRANTED in part** and

**RESERVED in part** for future resolution in the context of trial.

>    *v.*    *Plaintiff's Rule 37(c)(1) Motion to Preclude Defendant's Expert Witness, G. Lee Bryant, M.D., from Offering Opinions Neither Set Forth in His Report or His Discovery Deposition.*

Finally, Plaintiff argues that Dr. G. Lee Bryant, M.D., should be precluded from offering

certain opinions, primarily in regard to Plaintiff's olfactory dysfunction, that Plaintiff alleges

were not set forth in his expert report or in his discovery deposition.  (Doc. No. 110.)

Specifically, Plaintiff seeks to exclude Dr. Bryant's testimony suggesting that the cause(s) of

Plaintiff's anosmia could have been airbag deployment and a deceleration event during the

October 2008 accident, or Plaintiff's asthma.  *Id.* at 2.  Plaintiff also seeks to exclude Dr.

Bryant's testimony regarding nerve shearing.  *Id.* at 3.  Defendant filed a Response.  (Doc. No.

123.)

Magistrate Judge Brown recommended in his report that the Motion be granted in part

and denied in part.  Although Dr. Bryant's expert report could have been more comprehensive, it

provided notice of testimony regarding airbag deployment in a sentence stating that it was Dr.

Bryant's opinion that Plaintiff's anosmia "could have been affected by several different factors . .

. including a blow to the head suffered from the deployment of an airbag from a motor vehicle

accident."  (Doc. No. 155 at 5 (quoting Bryant Dep. (Doc. No. 110-1)).)  Magistrate Judge

Brown also opined that the while Plaintiff's asthma was not disclosed to Defendant until after

Bryant's report was submitted, Plaintiff had adequate opportunity to cross-examine Dr. Bryant

and the deposition may be used to rebut the testimony of Dr. Osetinsky.  (Doc. No. 155 at 5.)  As

to the deceleration event and nerve shearing, however, the Magistrate Judge concluded that Dr.

Bryant's report gave no indication that Dr. Bryant would testify on this topic, and Local Rule

39.01(c)(6)(d) prevents an expert from testifying beyond the scope of his expert report.  (Doc.

No. 155 at 5-6.)

Only Defendant objected to the Report, asserting that "deceleration is a physical

consequence of a front end collision and airbag deployment," and that Dr. Bryant adequately

linked the accident to Plaintiff's loss of smell in his report and deposition.  (Doc. No. 157 at 3.)

Further, Defendant argues that Dr. Bryant's testimony is being offered to impeach that of Dr.

Osetinsky, who was unaware of the accident, and Dr. Bryant will testify that Dr. Osetinsky

should have considered this factor as it is crucial to the issue of causation.  *Id.* at 3-4.  It is

Defendant's view that it would be "overly harsh" to limit Dr. Bryant's testimony to airbag

deployment and not "other natural aspects of a front-end collision, particularly when Plaintiff's

counsel has had adequate opportunity to cross-examine Dr. Bryant on two separate occasions."

*Id.* at 4.

The Court agrees with the Magistrate Judge's Report and **ADOPTS in part** it as to the

issue of airbag deployment and asthma.   Dr. Bryant may testify regarding airbag deployment in

the 2008 car accident and asthma as potential factors in Plaintiff's alleged anosmia.  However,

the Court **DECLINES to adopt** the Report as to the issues of a deceleration event or nerve

shearing.  The Court agrees that Dr. Bryant's expert report provided inadequate notice about the

possible occurrence and effects of a deceleration event during the October 2008 car accident.  A

deceleration event, from the Court's review of Dr. Bryant's deposition, appears to be a possible

mechanism of injury to Plaintiff's brain that may occur during a car accident, such as the one

Plaintiff was in, where there is a front-end collision and airbag deployment.  (Bryant Dep. at 30-

31.)  Although Dr. Bryant's expert report indicated that he was going to testify that the airbag

deployment in the car accident could have caused Plaintiff's olfactory dysfunction, he did not

explicitly state that deceleration could have also had this same effect. Nerve shearing is a physical phenomenon regarding the brain and olfactory nerve receptors that can explain the loss of the sense of smell following an impact to the skull or deceleration. *Id.* at 31. Despite the requirement that an expert report include not only the expert's opinions but also the "basis and reasons for them," Fed. R. Civ. P. 26(a)(2)(B)(i), no information was provided in the expert report or the accompanying attachments regarding the possibility of nerve shearing as a mechanism by which anosmia occurs.

Nevertheless, the Court finds that the subjects of Dr. Bryant's testimony, particularly as to nerve shearing, were not wholly unexpected, and that the failure to provide adequate disclosure is ultimately harmless and non-prejudicial in light of the time the Parties have had subsequent to the taking of the depositions in question prior to the now-impending trial date— almost exactly a year. Rule 26, which requires expert disclosures, "contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report." *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006). It is not surprising that Dr. Bryant would testify to the underlying physical occurrences that explain how the alleged airbag impact he specifically referenced would cause a loss of sense of smell. This is not to say, of course, that Dr. Bryant's expert report was adequate without a better explanation of the reasons underlying his findings; a more substantial explanation would have furthered the goal of Rule 26 to limit the need for expert depositions, *see E.E.O.C. v. Freeman*, 626 F. Supp. 2d 811, 822 (M.D. Tenn. 2009 (quoting *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008)). The Court must point out, however, that Dr. Osetinsky himself testified on nerve shearing and trauma as an underlying cause of Plaintiff's injury in his deposition several months prior to the deposition of Dr. Bryant (Osetinsky Dep. at 37-38.) Plaintiff was on notice of this

phenomenon as an underlying physical cause of olfactory dysfunction and could easily have returned to Dr. Osetinsky or an expert to develop an understanding of it, or to develop the medical testimony further.

The inadequacy of the report is more apparent as to the issue of deceleration, which, although it is a "consequence" of airbag deployment (as Defendant asserts), could be a cause of injury independent from the possibility of the airbag striking Plaintiff during the accident. The link established in the report between the car accident and Plaintiff's anosmia was not specific to the issue of deceleration, even though the Court agrees that the deceleration effect Dr. Bryant describes is a natural one in a front-end collision. However, Plaintiff has had plenty of notice and time prior to trial (and, indeed, two deposition opportunities) to explore Dr. Bryant's findings and to supplement her evidence regarding the loss of her sense of smell. Indeed, it would be "harsh," as Defendant puts it, to admit Dr. Osetinsky's non-live testimony concluding that the fall likely caused Plaintiff's loss of smell—an opinion apparently made without knowledge of Plaintiff's car accident—without allowing Defendant an opportunity to rebut it in court with testimony Plaintiff had ample time to review and prepare for.

In light of these findings, the Court will admit Dr. Bryant's testimony regarding deceleration and nerve shearing pursuant to Rule 37(c)(1). The Motion is **DENIED**.

**B. Defendant's Motions in Limine**

   *i.    Defendant's Motion in Limine No. 2 to Exclude Incident Reports*

First, Defendant moves to exclude from evidence a number of incident reports documenting patrons falling off CUS Nashville's bar (and the bars at other Coyote Ugly Saloon locations) before and after the incident in question. (Doc. No. 98, 98-1.) Plaintiff filed a Response. (Doc. No. 127.) Plaintiff indicated initially that she only intended to submit six

incident reports to the jury in her case in chief (Doc. No. 127 at 2), and then prior to the April 22 hearing indicated that she sought to introduce fourteen reports (Doc. No. 162).

Defendant's Memorandum of Law asserts first that the prior incident reports should be excluded under Federal Rules of Evidence 401 and 403 because they are not substantially similar to the incident in question and because their probative value is substantially outweighed by the danger of unfair prejudice. (Doc. No. 98-1 at 2.) Defendant cites a number of cases for the proposition that only prior incidents that are substantially similar to the one at issue can be admissible. *Id.* (citing *Rye v. Black & Decker Mfg. Co.*, 889 F.2d 100 (6th Cir. 1989); *Koloda v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373 (6th Cir. 1983); *Galloway v. Big G. Express, Inc.*, No. 3:05-cv-545, 2008 WL 2704443 (E.D. Tenn. July 3, 2008)). Defendant also asserts that the relevance of prior incidents depends on their proximity in time to the incident in question, *id.* (citing *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 297 (6th Cir. 2007)), and that incidents after the one in question are irrelevant under Rule 401, *id.* (citing *Croskey v. BMW of N. Am., Inc.*, 532 F.3d 511 (6th Cir. 2008); *Ellis ex rel. Perdergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690 (6th Cir. 2006)). Defendant has summarized all the incident reports in question in this case and argues that they are not substantially similar or are insufficiently detailed as to the wet bar condition that Plaintiff claims was the source of her injury. (Doc. No. 98-1 at 3-4.) Further, Defendant argues that the incident reports provided by other Coyote Ugly locations are inadmissible hearsay. *Id.* at 14.

Plaintiff agrees in her Response that prior incidents must be "substantially similar" to be admissible under *Rye*, and that notice or knowledge of the existence of a dangerous condition is a proper purpose for which evidence of other accidents can be admitted. (Doc. No. 127 at 2.) Plaintiff argues that each of the six accidents originally highlighted to the Court that documented

14

a patron falling off of the main bar at Defendant's premises and sustaining a head injury were substantially similar to her own situation, because they "occurred under similar circumstances." *Id.* at 3 (quoting *Rye*, 889 F.2d at 102). Each of these incident reports gave Defendant notice that allowing or encouraging sober or inebriated patrons to dance on an elevated surface above a concrete floor will inevitably result in one of them falling off of it and suffering a serious injury, regardless of the precise cause. (Doc. No. 107 at 3-4.) Further, Plaintiff argues that these incident reports are relevant to Defendant's gross negligence or recklessness (key in determining punitive damages), because they are relevant to show that Defendant failed to take remedial measures despite having knowledge of the six prior falls from the bar. *Id.* at 5.

The incident reports Plaintiff has provided to the Court document a wide range of scenarios in which a Coyote Ugly patron fell off the bar and hit her head. Throughout this case, however, including in Plaintiff's Complaint (Doc. No. 1) and her Pretrial Brief (Doc. No. 82), Plaintiff has asserted that Defendant's negligence was in encouraging her to get onto a "wet and slick" bar without adequately removing or warning of the wet and slick conditions that cause her to slip and fall. The development of the case to date has focused heavily on the bar's surface (indeed, much of the evidence the Court considers in this Order pertains solely to the condition of the bar on the night of Plaintiff's fall). The Court cannot allow Plaintiff at this juncture to make this a case about whether the very act of encouraging women to dance on the bar is negligent when Plaintiff has asserted all along that the bar surface was the reason she fell. Nor will the Court confuse the vague notion of "inevitability" Plaintiff suggests with the notice of a dangerous condition required by the law.

As such, the Court finds that only two of the incident reports in question could be said to be adequately similar to the circumstances of Plaintiff's injury such that she may claim the

reports put Defendant on notice of a dangerous condition. Incident Report No. 4 (Doc. No. 162-1 at 3), recorded about three years prior to Plaintiff's injury, states:

> A woman fell off the bar and must have mistepped
> Slipped off w/ left foot
> She is concious [sic] and knows where she is. Claims she had 8 beers only one here.
> Obvious gash on back of head

Incident Report No. 6 (Doc. No. 162-1 at 5), recorded about two-and-a-half years prior to Plaintiff's injury, states in relevant part:

> Subject 1 was dancing on the Bar. She decided to get down off the Bar. Subject 1 lost her footing when she stepped to the edge and fell to the ground, landing on her back and then cracked her head on the concrete.

These reports describe instances in which a patron specifically "slipped" or otherwise could not get a hold on the surface of the bar on Defendant's premises, resulting in falls that caused head injuries. Although these reports do not specifically mention liquid on the bar, the accidents describe a substantially similar cause for the falls described—the inadequate grip on the bar's surface. These reports may properly be introduced as probative of the issue of Defendant's notice as to the potential slipping danger presented by the bar surface, Fed. R. Evid. 401. These reports will not confuse the issues or mislead the jury, and, of course, Defendant may attack the adequacy of the notice these reports might have provided through cross-examination and closing argument.

For the reasons described above, Defendant's Motion is **GRANTED in part** and **DENIED in part**. The Court **RESERVES** for later judgment whether Plaintiff may introduce other incident reports for the purpose of establishing a punitive damage amount, if such an inquiry proves necessary after the first stage of the bifurcated proceedings in this case.

In this Motion (Doc. No. 99) and Memorandum of Law (Doc. No. 99-1), Defendant moves for the exclusion of certain proposed testimony by Dr. Osetinsky and Dr. Dirk B. Thacker.  Plaintiff filed a Response.  (Doc. No. 131.)

a.   Testimony of Dr. Osetinsky

Plaintiff provided a disclosure to Defendant indicating that Dr. Osetinsky was not retained for the purpose of litigation, such that Plaintiff was not including copies of his curriculum vitae and other materials appropriate for an expert witness, and indicating that Dr. Osetinsky's testimony might opine on the effect of Plaintiff's loss of smell on her life and side effects of her head injury.  (Doc. No. 19.)  Defendant asserts that in his deposition, Dr. Osetinsky testified that he used a "scratch-and-sniff" test, known as the Pennsylvania smell test, to confirm Plaintiff was not malingering, and that he also testified about the nature and permanency of the injuries Plaintiff suffered.  (Doc. No. 2-3.)  Defendant argues that the testimony of Dr. Osetinsky should be excluded because he was not a treating physician but instead was hired in anticipation of litigation and Plaintiff failed to provide a Rule 26 disclosure.  (Doc. No. 99-1 at 4.)  In support of this claim, Defendant emphasizes that Plaintiff visited Dr. Osetinsky only once, ten months after her last treatment, having already retained counsel and sent demand letters to Defendant. *Id.* at 4-5.  Further, Defendant argues that Plaintiff provided certain medical documents to Dr. Osetinsky to accomplish the purpose of her visit, which was to confirm that she was not malingering, and that Dr. Osetinsky admitted there was no treatment purpose of the test.  *Id.* at 5.

As such, Defendant argues that Dr. Osetinsky should be barred from providing opinion testimony at trial because he was not disclosed as a Rule 26 expert, and Defendant was not provided an opportunity to understand his opinions or their basis prior to deposition. *Id.* In the alternative, Defendant seeks the exclusion of his testimony on the Pennsylvania Smell Test, which was "clearly in anticipation of litigation." *Id.*

Plaintiff asserts, however, that Dr. Osetinsky was not selected or retained as an expert, and that his treatment was "for the purpose of diagnosing and determining the extent and duration of Plaintiff's loss of sense of smell," as explained in a letter Dr. Osetinsky wrote to Plaintiff's primary physicians (Ex. 4 to Osetinsky Dep.). (Doc. No. 131 at 1-2.) Dr. Osetinsky was not paid by counsel or by her family ("other than perhaps a co-pay"), *id.* at 2, and counsel claimed at the April 22 hearing that Plaintiff had been referred to him through family. Plaintiff emphasizes that counsel nonetheless provided a disclosure to Defendant regarding the content of Dr. Osetinsky's expected testimony, from which the deposition testimony did not substantially deviate. *Id.* at 2. To the extent any deviation occurred, Plaintiff could not have anticipated this because counsel did not have contact with the Doctor prior to the deposition. *Id.* Additionally, Plaintiff explained at the April 22 hearing that the point of Dr. Osetinsky's deposition testimony regarding the Pennsylvania Smell Test was that it showed Plaintiff has a permanent loss of sense of smell. In response to a question as to how he knew Barnes was being truthful, the Doctor had explained that there is an element of the test regarding malingering—not that the purpose of the test is to assess malingering, as Defendant suggests. If, however, the Court were to find the Rule 26 disclosure was deficient, Plaintiff argues that the opinion should not be excluded because any failure to disclose was harmless error, as Defendant had ample time to have its own expert review Dr. Osetinsky's testimony. *Id.* at 2.

The Court cannot find that Dr. Osetinsky was retained as an expert or in anticipation of litigation in this case, such that a disclosure in compliance with Federal Rule of Civil Procedure 26(a)(2)(B) was required. Defendant has not provided the Court with any reason to disbelieve the assertions of Plaintiff's counsel that Dr. Osetinsky was not selected or retained by counsel for the purpose of litigation, and that he received no payment for his services other than the usual medical charges incurred for treatment. Although the timing of Plaintiff's visit to Dr. Osetinsky could be suspect, a one-time visit to an ear, nose, and throat specialist in order to assess the extent and permanency of damage to her sense of smell is not unreasonable given that the Doctor's finding that her condition was likely permanent. Such a finding would explain why Plaintiff did not return to Dr. Osetinsky or receive a treatment recommendation from him.

Further, the Court cannot find on the evidence before it that purpose of Plaintiff's visit to Dr. Osetinsky and of the administration of the Pennsylvania Smell Test was to confirm that she was not malingering. In the deposition testimony excerpted by Defendant and attached to its Motion, Dr. Osetinsky appears to state that he was confident Plaintiff was not malingering, and then goes on to explain general and specific causes of the loss of sense of smell and the effects of this loss, his opinion as to the permanence of Plaintiff's loss of sense of smell, and other matters regarding side effects of head injuries. (Doc. No. 99-10.) The Court then reviewed the deposition more fully, because the excerpt provided by Defendant, which began on page 17 and did not include the content cited from pages 15 and 16, did not go into any detail as to the issue of malingering. It is true that in describing Plaintiff's test results, Dr. Osetinsky stated, "This is a test to identify who has a sense of smell and who may be exaggerating that they don't smell," and also that "This test often picks up people that are trying to malinger." (Osetinsky Dep. at 16.) From these statements, however, the Court cannot infer that the test is only performed to

detect malingering, even if it does screen for malingering when assessing the extent of a patient's loss of smell. There is no statement in the section of the deposition highlighted for the Court, as Defendant asserted, that the reason the test was performed was to detect malingering, or that the test is "not generally done to give treatment." (Doc. No. 99-1 at 2.) Dr. Osetinsky did not say these things, and Defendant has not given the Court a reason to believe that such is generally the case regarding the smell test. In light of these findings, the Court further rejects Defendant's assertion that Dr. Osetinsky was retained as an expert in anticipation of litigation and thus was subject to the disclosure requirements of Rule 26(a)(2)(B). Nor can such a finding be made specifically as to the testimony regarding the issue of malingering—this element of Dr. Osetinsky's opinion appears to have been well within the scope of his description of the test he performed in assessing the state of Plaintiff's injury and not offered in anticipation of litigation. Defendant's Motion is **DENIED** as to the exclusion of Dr. Osetinsky's testimony.

      b.   Testimony of Dr. Thacker

Dr. Thacker also treated Plaintiff on one occasion at Central Baptist Hospital in Lexington after she returned from Nashville on September 20, 2008. Dr. Thacker was not initially disclosed to Defendant, and Magistrate Judge Brown allowed for an extension to April 21, 2010 for depositions to be taken of two physicians (Dr. Fengler and Dr. Thacker) with regard to "limited areas discussed at [a] telephone conference" with the parties. (Doc. No. 44 at 2.) It appears from the Order that the areas discussed were, in Magistrate Judge Brown's words: (1) testimony of a "treating emergency room doctor to establish that the Plaintiff was treated for a skull fracture on the evening of the incident, that she incurred medical bills of approximately $8,600, that the medical bills were reasonable, and that a skull fracture would normally require follow up visits for treatment with a neurologist"; and (2) testimony of a physician in Lexington

"as to the reasonableness of the treatment and bills in Kentucky." *Id.* at 1-2. Defendant interpreted the Magistrate Judge's Order to mean that the depositions could be taken within the new deadline "to the extent that the subject matter would not be considered Rule 26 testimony." (Doc. No. 99-1 at 3.) Also in this Order, Magistrate Judge Brown provided Defendant's counsel an additional seven days after the later of the two depositions to supplement Defendant's expert disclosures should additional facts learned from these depositions have an impact on Defendant's disclosures. *Id.* The depositions were taken and Defendant did not subsequently supplement its expert disclosures.

According to Defendant, Dr. Thacker's testimony included opinions on a variety of medical bills submitted by other doctors, some of which pertained to treatment that occurred in Nashville or after the date on which he treated Plaintiff, as well as opinions on the findings of Dr. Osetinsky. (Doc. No. 99-1 at 3-4.) Defendant argues that it is Plaintiff's burden to prove that medical expenses incurred are necessary and reasonable, and that competent expert testimony is necessary to meet this burden in most cases. *Id.* at 5 (citing *Borner v. Autry*, 284 S.W.3d 216, 218 (Tenn. 2009)). Defendant states that a treating physician such as Dr. Thacker should not be permitted to testify as to whether other doctors' bills are reasonable and necessary without providing some disclosure. *Id.* Expenses incurred by a radiologist, neurologist and otolaryngologist, most of whom treated Plaintiff after she was seen by Dr. Thacker and some of whom treated her Nashville (where Dr. Thacker admitted he did not know about the cost of treatment), were outside the scope of his treatment and should be excluded in the absence of disclosures. *Id.* at 5-6.

Plaintiff essentially argues that Defendant is only challenging the failure to disclose, but that Plaintiff's Second Supplemental Expert Witness Disclosure (Doc. No. 45), filed over a week

prior to Magistrate Judge Brown's Order discussed above, stated that he would present testimony as to the necessity of Barnes' follow-up care in Lexington and medical bills incurred. (Doc. No. 131 at 4.) Plaintiff asserted at the April 22 hearing that Magistrate Judge Brown provided an opportunity for supplemental disclosures to deal with the potential of surprise to Defendant, but that there was no surprise, and Defendant did not need to supplement its disclosures.

The Court agrees with Defendant that full Rule 26 disclosures should have been provided for Dr. Thacker as to his testimony regarding other physicians' treatment of Plaintiff and related expenses. This testimony clearly goes beyond the scope of his treatment of Plaintiff. However, the Court's review of Dr. Thacker's deposition testimony indicates that Defendant's counsel was nonetheless able to effectively cross-examine Dr. Thacker regarding his experience and ability to assess the reasonableness and necessity of other doctors' treatment of Plaintiff—only common sense was necessary to accomplish this. He will again be able to do so at trial. Dr. Thacker's Defendant apparently did not need to take advantage of the seven days provided in Magistrate Judge Brown's Order to supplement its expert disclosures in the case of any surprise. A court need not exclude testimony about which a party failed to make required disclosures if this failure is harmless. Fed. R. Civ. P. 37(c)(1). The Court finds that the failure in this instance was harmless. As such, the Court **DENIES in part** the Motion to Exclude Dr. Thacker's testimony regarding the reasonableness and necessity of medical treatment and bills in Lexington. The Motion is **GRANTED in part**, however, as to Dr. Thacker's testimony regarding medical bills incurred in Nashville (Thacker Dep. at 39-41); Dr. Thacker admitted in this portion of his deposition that he is not and never has been licensed to practice medicine in Tennessee, and admitted that he was guessing whether the charges he was asked to consider from Tennessee

would be reasonable and necessary in the medical community in this state, *id.* at 41. Such speculative testimony is inadmissible.

  iii.  *Defendant's Motion in Limine No. 4. to Exclude Supplemental DVD and Testimony of Mitch Davis*

  In this Motion in Limine, Defendant seeks to exclude a DVD and testimony from Mitch Davis, a private investigator retained by Plaintiff to observe and record the goings-on at Defendant's premises on a night subsequent to Plaintiff's injury. (Doc. No. 101.) Plaintiff filed a Response. (Doc. No. 133.) The parties were heard on this motion at the April 22 hearing, and Plaintiff also provided the Court with a copy of the video she seeks to introduce, which the Court has reviewed. Defendant argues first that the video and authenticating testimony should be excluded because it was only made known to Defendant on July 23, 2010, less than the thirty days away from the August trial date, in violation of Local Rules 33, 34, and 36. (Doc. No. 101 at 1.) Beyond the lateness issue, Defendant argues that this evidence is irrelevant because it depicts the operation of Defendant's business after the night of the incident and because any probative value it might have is outweighed by its prejudicial effect. *Id.* at 1-2. Specifically, the video depicts Defendant's premises on June 12, 2010, around midnight, a peak business time, which would give the jury an unfair impression of Defendant's operations. Plaintiff's injury occurred over two hours later, around 2:30 a.m., at which time the bar has been described as "dead" on the night in question. At the hearing, counsel also emphasized that there is video of Plaintiff falling from the bar and a number of photographs from the night in question, and that Defendant would even stipulate to the drinking and encouragement of patrons to dance on the bar.

Plaintiff's Response asserts that the video is demonstrative evidence depicting female patrons being encouraged by one of Defendant's bartenders to dance on the bar, and some of these intoxicated patrons getting up on the bar to dance. (Doc. No. 133 at 1.) The DVD is at least relevant, Plaintiff asserts, to establish Defendant's recklessness, or conscious disregard of substantial and unjustified risk to others (i.e., the risk shown by the incident reports describing patrons falling off the bar), for the purpose of assessing punitive damages. *Id.* at 1. At the hearing, Plaintiff's counsel further pointed out that while there is video depicting Plaintiff's fall from the bar, it is only eight second long and does not depict the encouragement to get on the bar or other people on the bar. Further, he stressed that the jury has no idea what the bar looks like, and that, in fact, it is a "circus."

The Court finds that this demonstrative evidence may not be presented to the jury because it will not help jurors to determine whether Defendant was negligent or reckless, and will instead create the potential for prejudice and confusion. The Parties do not seems to disagree that the night depicted in the video is unlike the night of the incident in that the bar is quite crowded. The video depicts a number of women dancing on the bar, some doing so suggestively or with beer in their hands, as well as many other individuals standing in front of the bar. The bar seems to be boisterous, and a bartender with a microphone standing atop the bar does indeed encourage patrons to get up on the bar and dance. Indeed, it looks like a somewhat racy circus, to borrow the term used by Plaintiff's counsel.

This is problematic, because the jury is not being asked to find whether racy dancing and debauchery goes on at Coyote Ugly. It is being asked to find whether CUS Nashville was negligent and thus liable to Plaintiff, and whether its alleged recklessness entitles Plaintiff to punitive damages. The video in question does not depict anything that the witnesses will not be

able to describe adequately for the jury—women being encouraged to dance on the bar, some intoxicated, some consuming alcohol.  There is no need for a visual aid to illustrate testimony that bartenders encouraged women to dance on the bar, or that women on the bar were drinking, particularly given that Defendant does not contest these facts and that Plaintiff herself was drinking and fell off the bar.  The video is not helpful as to factors related to Plaintiff's fall such as the surface of the bar and surrounding areas or other characteristics of the bar area (it is shot in black and white, a few yards away from the bar).  Other than the woman who asks patrons to get onto the bar, it is not evident who is a CUS Nashville employee and who is a patron, so the video is not useful for assessing factors such as what duties the bartenders are performing and how they are performing them.  Further, the circus-like atmosphere depicted in the video is apparently unlike the environment in which Plaintiff was injured, which was instead a "dead" bar scene, and will likely confuse or mislead the jury and create the potential for prejudice against Defendant.

In light of these concerns, the Court **GRANTS** this Motion.

iv.  *Defendant's Motion in Limine No. 5 to Exclude Photographs taken by Plaintiff's Counsel During Inspection and After the Incident*

Defendant's fifth Motion in Limine seeks to exclude photographs taken of its premises after the incident.  (Doc. No. 106.)  Plaintiff filed a Response.  (Doc. No. 135.)  Although the parties indicated that this motion was outstanding in a Notice of Unresolved Motions in Limine (Doc. No. 162) filed prior to the April 22 hearing and were heard on all of Defendant's motions listed in that filing, neither addressed this motion in their oral presentations.

Defendant's objection to these pictures is these pictures were taken a year after the incident in question and that they could evidence post-remedial efforts by Defendant.  (Doc. No. 102 at 1.)  Plaintiff first claims that Defense counsel had previously made no objection to the

admissibility of two of the photographs, but has now changed course with this Motion. (Doc. No. 135 at 2.) Plaintiff next points out inconsistencies regarding Defendant's Interrogatory responses stating that there was one warning sign on Defendant's premises and Coones' proposed expert testimony stating that there are a number of warning signs on Defendant's premises. *Id.* at 2. Plaintiff wants to be allowed to show the jury all of the signs counsel photographed if Coones is to be believed, or for Defendant to be required to identify which of the warning signs counsel photographed was the sign referenced in its Interrogatory response. *Id.*

In his frustration with Defendant's actions, Plaintiff's counsel seems to have forgotten to tell the Court why these images should be admitted at all. Presumably, Plaintiff is of the opinion that these photographs would demonstrate for the jury the nature and verbiage of warnings on Defendant's premises, albeit a year later. Nor did Defendant, in its cursory objection to the photographs, explain to the Court why the photographs would constitute improper evidence of post-remedial efforts if its own expert will testify as to the number and type of warning signs on the premises several months after the incident. This matter will be **RESERVED** for resolution in the context of trial if the Parties are unable to resolve it themselves prior to that time, which they are encouraged to do.

> v. *Defendant's Motion in Limine No. 10 to Exclude Evidence of Corporate Ownership of Defendant and Other Coyote Ugly Saloon*

Defendant moves next to exclude evidence of CUS Nashville's corporate ownership and the ownership of other Coyote Ugly operations (the Court believes it is safe to assume that Defendant meant "Saloons," not simply a single other "Saloon"). (Doc. No. 107.) Plaintiff filed a Response. (Doc. No. 129.) Defendant argues that such evidence is irrelevant because Defendant is a local LLC with separate ownership from other Coyote Ugly locations, and

because it would be unfairly prejudicial to compare Defendant's circumstances to those of other Coyote Ugly locations as they are not parties and there is no evidence to show that they are sufficiently similar to Defendant to justify comparison. (Doc. No. 107 at 1.) Plaintiff asserts that all Coyote Ugly Development Corporation owns a majority interest in Defendant and many other local Coyote Ugly operations, and that they are required to follow certain policies under the control of Liliana Lovell. (Doc. No. 129 at 1-2.) As such, corporate ownership may become relevant, and Plaintiff urged the Court to reserve ruling in her Response, *id.*, as well as at the April 22 hearing. At that hearing, the Court instructed the Parties that this Motion would be **RESERVED** for resolution in the context of trial, and that they are not to mention this matter before the jury prior to the Court's ruling.

> vi. *Defendant's Motion in Limine No. 11 to Exclude Evidence of "Body Shots," "Penalty Shots" and/or "Spankings"*

Finally, Defendant moves to exclude evidence of certain drinking activities that are sometimes carried out at the bar, including "body shots," "penalty shots" and "spankings." (Doc. No. 108.) Plaintiff filed a Response. (Doc. No. 128.) As the Court learned at the April 22 hearing, "body shots" at the Coyote Ugly Saloon involve a bartender lying on the bar while a patron (or another bartender) takes a shot off of her belly, while a "penalty shot" involves the bartender pouring a shot into the patron's mouth while the patron is on the bar and spanking the patron (Doc. No. 128 at 2). Plaintiff asserts, first, that this evidence is relevant because it pertains to the multitude of tasks bartenders are expected to perform that might prevent them from performing the task of keeping the bar clean and dry while patrons are on it. *Id.* at 3. Second, Plaintiff argues that the fact that Defendant's bartenders were encouraged to pour body shots and penalty shots corroborates the testimony of Julie Knudsen that on the night in question,

bartenders poured shots of liquor that resulted in the bar being wet.  *Id.* at 4.  Defendant argues that there is no evidence to suggest that body shots or penalty shots occurred on the night in question, rendering the evidence irrelevant, and that the evidence would be unfairly prejudicial as its probative value is outweighed by its prejudicial effect.  (Doc. No. 108 at 1.)  Defendant elaborated at the April 22 hearing that *only* the testimony of witness Julie Knudsen indicates that the bar was wet on the night of the incident, and that all the witnesses in the case have in fact suggested that the bar was "dead" on the night and time in question (soon before closing time).

The Court agrees with Defendant that the probative value of this evidence is very low because there is no evidence whatsoever that body shots or penalty shots were occurring at the time of the incident, and that its admission would be unduly prejudicial.  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Knudsen's testimony that shots of liquor were being poured while she and Barnes were sitting at the bar, and that liquid from the shots ended up on the bar surface, makes no reference whatsoever to body shots or penalty shots.  In relevant part, she stated, "I didn't see [bartenders] deliberately pour anything onto the surface of the bar, but there was liquid on the bar because of the liquid they had poured [into shot glasses]," and, "The shots spilled onto the bar."  (Knudsen Dep. at 60-61.)  The fact alone that Knudsen saw shots being poured and that liquor from the shots splashed onto the bar, regardless of whether the shots were then consumed off of the body of a bartender or poured into someone's mouth, would tend to show that the bar was wet—a fact that is indeed consequential to the outcome of this case.  That body shots and penalty shots sometimes occur at CUS Nashville, however, makes this fact no more or less likely, particularly because none of the evidence in this case suggests that such activities

occurred when Plaintiff was injured. The evidence has no probative value in this respect. Also, in terms of corroboration, it would not be helpful in assessing Knudsen's testimony about liquor splashing onto the bar when being poured into shot glasses for the jury to know that on some occasions, the contents of those shot glasses are consumed off of bartenders' bodies or poured into customers' mouths. Further, there has been no evidence to show that the bar was busy when Plaintiff was there (instead, quite the opposite), or that the bartenders were overwhelmed with tasks due to obligations such as doing body and penalty shots. Evidence that these activities occurred at other times is not probative of Defendant's negligence on the night in question.

Ultimately, the proposed evidence creates the potential for confusing the jury as to what went on the night of Plaintiff's injury and distracting them from the facts presented as to this particular incident. Given the risqué nature of these aforementioned drinking practices, there is also a possibility of prejudice against Defendant that clearly outweighs whatever limited probative value this evidence could be said to present. As such, the Court finds that this evidence must be excluded. Fed. R. Evid. 401, 403. Defendant's Motion is therefore **GRANTED**.

### III. CONCLUSION

For the reasons stated above, Plaintiff's General Motions in Limine are **GRANTED** as to Paragraph 3 and **RESERVED** for later judgment as to Paragraph 6. The Report of Magistrate Judge Brown is **ADOPTED** in its entirety as to Plaintiff's Motion regarding Charles Coones' testimony, which is **GRANTED in part** and **DENIED in part.** The Report of Magistrate Judge Brown is **ADOPTED** as to Plaintiff's Motion regarding evidence of the 2008 accident, with the clarification that the Motion is **GRANTED in part** and **DENIED in part**. The Report of Magistrate Judge Brown is **ADOPTED in part** as to Plaintiff's Motion to exclude photographs

of her other than the night of her injury, and the Court finds that the Motion must be **GRANTED in part** and **RESERVED in part** for resolution in the context of trial. The Report of Magistrate Judge Brown as to Plaintiff's Rule 37(c)(1) motion to bar certain testimony of Dr. Bryant is **ADOPTED** in some respects but not others, such that the Motion is **DENIED**.

Defendant's Motion in Limine No. 2 is **GRANTED in part**, **DENIED in part**, and **RESERVED in part.** Defendant's Motion in Limine No. 3 is **DENIED**. Defendant's Motion in Limine No. 4 is **GRANTED**. Defendant's Motion in Limine No. 5 is **RESERVED** for later Judgment. Defendant's Motion in Limine No. 10 is **RESERVED** for later judgment. Defendant's Motion in Limine No. 11 is **GRANTED.**

It is so ORDERED.

Entered this the __29th_____ day of April, 2011.


JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT